## 8227.  HOGAN *et al. v.* THOMAS.

BROYLES, P. J.  Under the evidence introduced, the court erred in direct-
ing a verdict for the plaintiff.

*Judgment reversed. Jenkins and Bloodworth, JJ., concur.*
DECIDED APRIL 25, 1917.

Complaint; from Laurens superior court—Judge Kent. May 29,
1916.

James A. Thomas sued Roscoe C. Hogan and Uriah G. B. Ho-
gan for $350 and interest, alleged to be due under a written con-
tract by which they agreed to pay him that sum to obtain a loan
of $3,500 for them on certain land. He alleged that he obtained
the loan and placed it at their disposal, but that they refused to
accept it. The defendants, in their answer, denied the material
allegations of the petition. On the trial the judge, at the con-
clusion of the evidence, directed a verdict for the plaintiff. The
defendants brought the case to this court on exceptions to the re-
fusal of their motion for a new trial, in which they alleged that the
verdict was contrary to evidence and without evidence to support
it, and that the directing of a verdict for the plaintiff was error,
because the contract sued on was without consideration, unilateral,
and without mutual obligation, and because the money was not

tendered to or refused by the defendants, and it was not shown that the plaintiff secured the money to close the loan with, and further, because there was a question of fact as to who was to get the land released from the old loan when the contract was made.

The contract introduced in evidence by the plaintiff was as follows:

"Dublin, Ga., January 2d, 1915.

"To James A. Thomas: We hereby constitute you our agent, and request and authorize you as such to negotiate for us a loan of thirty-five hundred dollars, on five years time, with interest at 7 per cent. per annum, payable . . . annually, at such place as you may name; said loan to be evidenced by our note, of the form used by you, and said note and loan to be secured by a deed with power of sale to secure debt, of the form used by you, to real estate owned by us, consisting of 300 acres of land in the 18th district of Laurens county, Georgia, more particularly described in our application of even date. In consideration of the procurement of said loan by you or by any other party or parties to whom you may transfer this contract, we hereby agree: First: To pay as commission ten per cent. of loan granted us, . . . dollars, to be deducted from the proceeds thereof. Second: To furnish a full and complete abstract, showing perfect title to lands described in my application for said loan, and to save you harmless from loss by reason of your guarantee that said abstract is full and complete. Third: To accept said loan if negotiated for us, and to pay interest thereon from the day the money is placed at our disposal, subject to completion and delivery by us of notes and deed of approved form, which shall be a first lien upon the property described in our said application. Fourth: To pay the fees for recording, other incidental expenses, and all expenses incurred in perfection of our title.

"If for any cause we . . . unable or unwilling to carry out the provision of this contract after said loan shall have been procured for us, or our title should be pronounced defective by competent counsel employed to review said abstract, then we agree to pay you, or transferees, interest on the money from the date of procurement of loan, and said commission.

"We have made, constituted, and appointed, and by these presents do make, constitute, and appoint said James A. Thomas our

true and lawful attorney in fact to obtain for us said loan, and we hereby authorize . . . . to receive for us the whole or any part thereof, check, draft, or in cash, either for the payment of any prior lien or claim against the property described in our said application, or for our further use or benefit. And we further authorize the said James A. Thomas to pay off any and all liens or claims of whatsoever kind and character against the property described in our said application, paying the amounts thereof directly to the legal holders of the same respectively, and to take out in our name insurance on the buildings described in said application, to the amount of————————.

"Witness our hands and seals, this second day of January, 1916.

[Signèd] Roscoe C. Hogan (L. S.)

[Signed[ Uriah G. B. Hogan (L. S.)."

The plaintiff testified as follows: He performed his part of said contract. He took the application, made abstract, submitted it to his company. They accepted the application, $3,500, and sent him all the loan papers to be signed by the defendants, and authority to draw on them for the money. The only reason the loan was not closed was the fact that there was a prior lien on this land in the application and other lands, made by D. G. Hughes, for $30,000, and defendants were unable to get this land in their application released from the old loan. He did not have the money in his hands, nor did he see the money sent to close this loan with, but Howard M. Smith, of Macon, Georgia, informed him that this loan had been accepted, and that the money was then ready to close it with when the title was straight. He knew of the old loan of $40,000 when and before he took the contract sued on. He had a talk with defendants, Mr. Finn, and Mr. Williams about getting the land in this application released from the big loan, and it was the understanding that they were to have this done, and it was not the contract or agreement that plaintiff was to do this. "From the time the loan was accepted until it was called off, interest to the amount of $46.30 had accrued, and I had this to pay. I did all I could to close the loan, and it was no fault of mine that it was not closed, and I admit it was not the fault of defendants, but it was on account of the prior loan on this and other land that they could not get released." Plaintiff was ready to give draft or cash to Finn or defendants to close the loan the day it was called off.

R. C. Hogan, one of the defendants, testified: He was the one who made the contract with Mr. Thomas to get the loan. He told Mr. Thomas that they owed Mr. Finn money on this land and wanted the loan to pay him with; also told Mr. Thomas about the Hughes loan, and told him if he and Mr. Finn and Mr. Williams could get it in shape, he wanted Mr. Thomas to get the loan, but that if he, Thomas, Finn, and Williams could not get this land out of the old loan, defendants did not want to pay anything on the land or loan; and Mr. Thomas said he had seen Finn and Williams, and that the old loan could be arranged and this land released; and on these terms and with this understanding he gave Thomas the contract. Thomas has never offered them the money, and defendants have not refused to take the money. They wanted it then and still want it, but it was the distinct understanding that the defendants were not the ones to get the old loan released from the land in quesion, and Thomas, Finn, and Williams all knew this.

G. H. Williams testified: Thomas and Finn came to him about getting the land released from the old loan, and he told them he thought he could do so, and would try, and he did what he could to get it released, but it was just after the war broke out, and loan companies would not disturb anything at that time. He, Finn, and Thomas all did all they could to get the land released, but failed. He had assumed the payment of the old loan, and the money Thomas was trying to get was not to go to the loan company, but was to go to Finn. Thomas and Finn both knew about the old loan before the contract sued on was made.

*Williams & Flynt,* for plaintiffs in error.
*S. W. Sturgis,* contra.